Richard J. Zemmer and Shirley M. Zemmer v. Commissioner.
Zemmer v. Commissioner
Docket No. 90422.
United States Tax Court
T.C. Memo 1963-131; 1963 Tax Ct. Memo LEXIS 212; 22 T.C.M. (CCH) 638; T.C.M. (RIA) 63131; May 15, 1963
J. Bruce Donaldson and David P. Ruwart for the petitioners. Ronald S. Supena for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income tax of petitioners for the years 1957 and 1958 in the amounts of $878.54 and $502.26, respectively. The major point in controversy is the depreciable base of certain furniture and fixtures purchased by petitioner in 1957 together with *213 the inventory and business of Des Jardins Drug Store of Lapeer, Michigan. Also in issue is whether petitioner suffered a deductible loss in the taxable year 1957 resulting from the discard of certain soda fountain equipment. Other issues involved herein were disposed of by agreement of the parties. Findings of Fact Some of the facts were stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by reference. Richard J. and Shirley M. Zemmer are husband and wife residing in Lapeer, Michigan. Their joint returns for the years 1957 and 1958, made on the cash basis and for the calendar year period, were filed with the district director of internal revenue, Detroit, Michigan. Shirley M. Zemmer has been joined herein solely by virtue of her participation in filing the above joint returns. Therefore, as used hereinafter, the term "petitioner" will refer only to Richard J. Zemmer. Petitioner is a registered pharmacist. From 1953, when he graduated from pharmacy school, until 1956 he was continuously employed as a full-time pharmacist at Des Jardins Drug Store, Lapeer, Michigan. During the period here relevant "Des Jardins" was operated as *214 a co-partnership by Paul E. and Grace L. Des Jardins. At the beginning of petitioner's employment Paul E. Des Jardins had already been in the drug store business for well over 30 years. Sometime between 1953 and 1956 Paul E. Des Jardins indicated to petitioner his desire to sell the drug store business, in part, as a result of failing health and advancing age. Petitioner, conversely, indicated his desire to buy the business. These conversations ultimately resulted in an "Agreement" dated November 16, 1956, entered into by Paul E. and Grace L. Des Jardins, as parties of the first part, and petitioner, as party of the second part, pertinent portions of which are excerpted below: 1. The first parties agree to sell to the second party the fixtures, inventory and good will of the business owned by the said first parties and located at 304 Nepessing Street, Lapeer, Michigan. 2. The first parties agree that upon payment to them of the down payment expressed in the following paragraph, they will execute and deliver to the second party a Bill of Sale of fixtures, inventory and good will, together with the right to use the name "Des Jardins Drug Store." 3. The said second party agrees *215 to pay to the first parties as a consideration for the said fixtures the sum of Twenty Thousand ($20,000.00) Dollars, for good will the sum of Five Thousand ($5,000.00) Dollars, and for the inventory of goods, wares and merchandise and supplies in and upon said premises as of January 1, 1957 a sum equal to the cost or market price, whichever is higher * * *. It is understood and agreed that the parties are employing independent inventory men for the purpose of taking the inventory, and they agree to accept such inventory and pricing, except and unless the same shall be found to be in error * * *. Prior to the execution of the November 16, 1956, Agreement - which crystallized both petitioner's offer to buy the drug store business and the Des Jardins' acceptance - petitioner had obtained the services of Richard J. Bahls, an attorney and the City Attorney of Lapeer, Michigan, to advise and counsel him relative to the financial wisdom of the contemplated purchase as well as to represent him legally in the event the transaction should be consummated. According to his testimony, Bahls familiarized himself with the Des Jardins drug store business - its earning capacity, goodwill, location, *216 and particularly the value of its furniture and fixtures. In arriving at the latter, Bahls examined those fixtures and compared them in terms of quality, condition, and general appearance with those of the two other drug stores located in Lapeer. Additionally, a conference was arranged with an executive of the drug firm of McKesson and Robbins at Detroit relative to securing an outside appraisal of their value. Bahls testified that in October of 1956 he and petitioner, who had prepared a list of the furniture and fixtures extent in Des Jardins Drug Store, were advised by the above executive, a man familiar with Des Jardins, that such furniture and fixtures, exclusive of a certain soda fountain, could be duplicated with comparable used fixtures for $20,000. As evidenced by the November 16 Agreement, the parties divided what was to be purchased into three component elements, viz., inventory, furniture and fixtures, and goodwill. Since the contemplated transfer would not take place until after the beginning of 1957, it was agreed that the price to be paid for the inventory would be its value as set by independent inventory men as of January 1, 1957. The purchase price stated in the *217 Agreement for furniture and fixtures ($20,000) and goodwill ($5,000), however, was based solely upon the investigation into the value of those assets conducted by petitioner and his attorney prior to November 16. No other appraisal of the assets was made prior to the sale and no offer for them other than the one contained in the November 16 Agreement, was ever made by petitioner to the Des Jardins. On January 2, 1957, in pursuance of the Agreement of November 16, 1956, Paul E. and Grace L. Des Jardins, as parties of the first part, executed a "Bill of Sale" transferring to petitioner, as second party, all of the stock of goods, merchandise, fixtures, franchises and good will, including the right of the use of the name "Des Jardins Drug Store", which said items are more particularly described and evaluated for the purposes of sale as follows: Furniture, fixtures, equipment, furnishings and prescription blanks and files: 1 Prescription Counter, 1 Cary Safe, 1 Desk, 1 4-Drawer Filing Cabinet, 1 Refrigerator, 1 Prescription Balance, 1 General Balance, 1 Smith-Corona Portable Typewriter, 1 Burroughs Adding Machine, 1 National Cash Register, 1 Old National Cash Register, 1 Cash Register *218 (stored away), Prescription Tools, Small Hughes Hair Brush Display Case, Worthington 5-ton Air Conditioner, Light Fixtures, Wall Cases, 4 General Display Cases, Tobacco Case, Nut Machine, Candy Display Island, Book Display Island, 1 General Display Island, Gibson Greeting Card Rack 2 Special Greeting Card Racks, Sheaffer Pen Case, DuBarry Cosmetic Case, LaCross Implement Case, Front Sign, Fountain, 2 Malt Mixers, Compressor, Carbonator, Hot Fudge Warmer, Glasses, Sundae Dishes, Spoons, And such other miscellaneous items not herein particularly set forth, but located in and about the premises as of the time of sale. Priced at $20,000.00 Inventory of the stock of merchandise, drugs and sundries of every kind and nature in and about the premises. Priced at $35,550.00
Good Will
Priced at $ 5,000.00
Total
$60,550.00 This total represents the full consideration to be paid by the second party to the first parties as specified in the foregoing paragraph. Petitioner did not intend to continue using the name "Des Jardins" when he purchased the business. The name was in fact changed from "Des Jardins" to "Zemmer" approximately 18 months after the purchase. As of *219 January 2, 1957, the furniture and fixtures located in Des Jardins Drug Store were insured for a total of $15,000 under co-insurance policies having a co-insurance factor of 80 percent of value. Petitioner continued to keep this insurance in effect after he acquired the business. For the year 1957 petitioner's personal property returns filed with the City of Lapeer reflected the "cost" of "Furniture and Fixtures" as $4,000. For 1958 a similar return reflected "value" of substantially the same items as $4,400. Petitioner's 1959, 1960, and 1961 personal property returns, prepared according to petitioner upon advice of an accountant, reflected "original cost" of "Furniture and Fixtures" or "Machinery and Equipment" as in excess of $20,000. According to the testimony of respondent's agent, the cost of furniture and fixtures acquired by petitioner in connection with his purchase of the Des Jardins drug store business was $7,143. Respondent's agent testified that a used fixtures dealer had advised him "that he could take for two thousand dollars or three thousand dollars and outfit a drug store of this size with as nice a fixtures, used, as could be, that you could find." In regard to *220 the method used in computing the $7,143 figure, the agent further testified that reference to petitioner's personal property return filed as of January 1, 1957, with the City of Lapeer showed the "cost" of "Inventories" to be $20,000. This amount represented an approximate 56 percent understatement below the value of such inventory known by the agent to have been set by independent inventory men in conjunction with petitioner's purchase of the property. Petitioner's 1957 personal property return also reflected a "cost" value for "Furniture and Fixtures" of $4,000. On the assumption that such fixtures likewise had been reported at 56 percent of value, respondent's agent determined their "true" value or cost to be $7,143. For the taxable years 1957 and 1958 petitioner took depreciation deductions for furniture and fixtures upon a depreciable base of $19,000, which represents the alleged cost of such furniture and fixtures reduced by $1,000 for certain soda fountain equipment discarded by petitioner during 1957. Also for the taxable year 1957 petitioner claimed an expense for the alleged abandonment of a soda fountain and allied equipment including a compressor, carbonator, blenders, *221 and soda utensils in the amount of $1,000. Ultimate Findings of Fact The depreciable base of the furniture and fixtures purchased by petitioner on January 1, 1957, is $14,000. Petitioner is not entitled to a deduction for the alleged abandonment of soda fountain equipment during 1957 since he has failed to segregate and establish its cost basis. The depreciable base allowed for furniture and fixtures has been adjusted to reflect the disallowance of this abandonment item. Opinion Section 167 of the 1954 Code provides that a deduction shall be allowed for the depreciation of property used in the trade or business, and that the basis upon which such depreciation shall be allowed is the adjusted basis of the property for determining gain or loss under section 1011. Section 1012 provides that the adjusted basis of property for gain or loss purposes is its basis as determined under section 1012 which is, for purposes here pertinent, cost. Petitioner contends that the cost of the property in question was $20,000, citing the Agreement of November 16, 1956, the Bill of Sale, and other documents relative to the purchase including a recorded chattel mortgage. We, of course, are not *222 bound by the $20,000 allocation to furniture and fixtures made in these documents, but are free to increase or decrease the amount so allocated in accordance with the facts. (C.A. 6, 1959), affirming a Memorandum Opinion of this Court. By way of additional evidence petitioner was able to show that he was counseled in the purchase by an attorney and that he was advised by a drug store "expert" as to the value of the furniture and fixtures in issue. But the attorney admittedly was no expert in valuation, and the drug store "expert" failed to testify. Of the competent evidence which the petitioner did offer, the most persuasive, on the valuation issue, was that the items in question were insured before the transaction by the seller, and continued to be insured after the transaction by petitioner, for $15,000 under 80 percent co-insurance policies. Equally as weak was the direct evidence offered on valuation by respondent. While respondent's agent testified he was told by a used furniture dealer that a drug store the size of Des Jardins could be outfitted with used fixtures for two or three thousand dollars, the *223 dealer himself did not testify. Nor are we persuaded to any great degree by respondent's computation based upon the figures used in petitioner's 1957 personal property return. The assumption that petitioner understated furniture and fixtures thereon by a specified percentage remains, after all the evidence has been presented, just an assumption and has no reasonable basis in fact. But respondent does not predicate his argument solely, nor in fact predominantly, upon direct proof of valuation. The major thesis which he propounds herein is based upon inference. As respondent points out, the parties have agreed that $35,500 of the total purchase price is properly allocated to inventory, leaving only allocation of the remaining $25,000 in dispute. It is respondent's position that the business possessed goodwill of a value in excess of the $5,000 allocated to it in the various documents relative to the sale. The inference is that if goodwill is worth more, furniture and fixtures are worth correspondingly less. While we agree in principal, we do not feel the evidence warrants ascribing to goodwill the $17,857 value propounded by respondent. Unquestionably the Des Jardins drug store business *224 possessed goodwill. This we would infer from the fact that Paul E. Des Jardins, whose name the business bore, had been engaged in the same business for over 30 years. Yet as petitioner points out, Des Jardins was of an advanced age, and prior to the sale his health had been poor, which resulted in his inability to service customers and consequently in a general decline in business. For this reason, as well as others, petitioner contends that he did not value the Des Jardins name highly for goodwill purposes. Certainly this contention is buttressed by our finding that petitioner did not intend to continue using the existing name when he purchased the business, corroborated by the fact that the name actually was changed from "Des Jardins" to "Zemmer" within 18 months of the transfer. Respondent hastens to point out that a part of the goodwill of the Des Jardins drug store business consisted of franchises, many of which were exclusive, with numerous drug and cosmetic houses. However, we note from the Agreement of November 16 that while the sellers agreed to transfer their rights in these franchises and would "in whatever manner possible assist [the buyer] in a continuation of said franchises, *225 " the sellers specifically stated that they would "not guarantee such continuation inasmuch as the same are terminable by the companies granting [them]." Since the franchises were terminable at will by the companies granting them, it would appear to us that whatever rights were transferred to petitioner in connection therewith were somewhat ephemeral. For the taxable year 1957 petitioner claimed an expense for the alleged abandonment of a soda fountain and certain allied equipment including a compressor, carbonator, blenders, and soda utensils in the amount of $1,000. The only evidence introduced with respect to the basis of these items was petitioner's own testimony, admittedly self-serving and subject to the qualification that petitioner was no expert. Although petitioner stated that he consulted with his accountant prior to claiming the expense, no testimony in this regard was elicited from the accountant when he was placed on the stand. Neither the "Bill of Sale" nor the "Chattel Mortgage," which listed the tangible assets sold, went as far as to break those items down by price. While we are inclined to agree with respondent that petitioner has not proven the actual abandonment *226 of the property within the meaning of the law, [1] we find it unnecessary to pass upon this issue since, whether the property was abandoned or not, petitioner has failed to segregate and establish its cost or other basis and thus to prove the extent of the alleged loss. Based on the record as a whole, we find the depreciable base of the furniture and fixtures in question, including the soda fountain and allied equipment, to be $14,000. To take into account concessions made by petitioner at trial and adjustments made necessary by our findings, Decision will be entered under Rule 50. Footnotes
1. Whether or not there has been an abandonment depends upon the intention of the owner coupled with the act of abandonment, both to be ascertained and determined from the surrounding facts and circumstances. , aff'd . Mere non-use of property does not constitute an abandonment, , nor does the storage of items not used, where they are available for use again, .↩